## W. W. FOY v. BLADES LUMBER COMPANY.

(Filed 11 May, 1910.)

1. **Deeds and Conveyances—Fraud—Cancellation—Plaintiff's Title—Defendant's Possession—Procedure—Evidence—Nonsuit.**

    When defendant has entered upon and cut timber from plaintiff's land under plaintiff's deed to the land, which, by the verdict of the jury and judgment entered accordingly, have been set aside for fraud, it is error for the lower court to nonsuit the plaintiff, upon the question of plaintiff's damage, on the ground that he has failed to show title in himself, when the defendant has failed to show a title in itself superior to that acquired by the void deeds; for it would be inequitable to permit the defendant to thus take advantage of its own fraud and wrongful act and assail the plaintiff's title until it had surrendered the possession which it had obtained of plaintiff by fraud. Whether the defendant may show that plaintiff is not the owner of the land in reduction of the damage is not presented in this case.

2. **Deeds and Conveyances — Title — Common Source — Timber Rights.**

    When defendant takes as plaintiff's grantee a restricted interest in plaintiff's land under his deed, in this case standing timber of a given dimension, and enters upon the land and cuts the timber accordingly, his motion to nonsuit upon the ground that plaintiff has not shown title thereto will be denied, as defendant will not be heard to deny or question the validity of the title of the plaintiff, having acquired possession under and by virtue of the deed.

APPEAL from *Cooke, J.,* at June Term, 1909, of JONES.
The facts are sufficiently stated in the opinion.

*T. D. Warren* and *Simmons, Ward & Allen* for plaintiff.
*W. W. Clark* and *Moore & Dunn* for defendant.

WALKER, J. This action was brought by the plaintiff to recover $25,000 as damages for unlawfully and wrongfully cutting and removing from his land a large quantity of trees,

wood and lightwood. The plaintiff alleges that on 27 May, 1904, he executed to the defendant a deed for a part of said lands, and on 21 October, 1904, he executed a contract, in the form of a deed, to the defendant, by which, for the nominal consideration of $1 and the further consideration of $1 per 1,000 feet for all timber cut and delivered by the defendant, he sold to the defendant all the timber on the other tract of land described in the pleadings, above the size of 12 inches at the base when cut, and which was then, or which may be during the next ten years, standing and growing on said land. The timber was to be cut within ten years unless the time was extended. Rights of way over and through said land and all other lands of the plaintiff were granted, with the right to build any structure, railroad or tramways for the purpose of cutting and removing the timber.

In 1907 the plaintiff brought an action against the defendant, and in his complaint alleged that the said deeds were obtained from him under false and fraudulent representations of the defendant's agent, to the effect that the lands which the plaintiff claimed to own did not contain the number of acres set forth in said deeds, to wit, 437½ acres, but only 125 acres. That the plaintiff was ignorant as to the number of acres in the said tracts of land, and the defendant, by its agent, taking advantage of the plaintiff's said ignorance, by the said false and fraudulent representations, and by other false and fraudulent representations then and there made, induced the plaintiff to execute the said deeds to the defendant. That the said agent also falsely and fraudulently represented, in the manner aforesaid, that the defendant did not own but 125 acres of the said land, and that, taking advantage of the ignorance of the plaintiff as to the extent of his ownership, and well knowing that the representations made by him as to the ownership and the acreage, and the other representations then and there made, were false, and the plaintiff really owned about 437½ acres, unlawfully and wrongfully induced the plaintiff to execute the said deeds to the defendant. The plaintiff, in his said complaint, prayed that the deeds be declared fraudulent and void and that they be adjudged to be canceled. The defendants denied the material allegations of the complaint, and the issues raised by the pleadings were submitted to the jury, as follows:

1. Was the deed from the plaintiff to the defendant, dated 27 May, 1904, procured by misrepresentation and fraud, as alleged in the complaint?

2. Was the deed from the plaintiff to the defendant, dated 21 October, 1904, procured by misrepresentation and fraud, as alleged in the complaint?

The jury, for their verdict, answered the first issue Yes, and the second issue Yes, and thereupon the court adjudged the said deeds to be null and void, and that they be canceled.

There was evidence in the case tending to show that the said deeds covered the land described in the complaint in this action, and that the defendant cut the timber on the said land and removed the same therefrom after the said deeds were executed.

At the close of the plaintiff's evidence the court entered a judgment of nonsuit, on the motion of the defendant, upon the ground that the plaintiff did not show any title or right of possession to the land, or any ownership of the timber thereon, by estoppel or otherwise; and this was the question presented and argued before us.

We think that there was some evidence upon which the plaintiff might have recovered, and that he was entitled to have the same submitted to the jury, in order that they might find the facts.

Let it be conceded, for the sake of argument and for the present, that the defendant was not estopped by merely receiving the deeds from the plaintiff. *Averitt v. Wilson,* 4 Barbour, 180. It sufficiently appears in the case, we think, that it obtained the possession, or cut the trees from the land, by virtue of the deeds which it had fraudulently procured from the plaintiff, and good faith requires that the defendant should surrender the possession of the land to the plaintiff and not be permitted to contest his title until he has done so, as the deeds through which he obtained possession of the land have been set aside and canceled, because of the false and fraudulent representations of defendant's agent that the plaintiff was not the owner of the land claimed by him, and the jury found, and the court has adjudged in the former suit between the same parties, that the said representations were false and fraudulent, and that the plaintiff was, in fact, as between him and the defendant, the owner of the land described in his complaint. It would be inequitable for the defendant to obtain possession of land or the permission or right to cut trees thereon and remove the same for the purpose of profit, upon the false and fraudulent representation of its agent, and then be allowed to contest the title of the plaintiff to the land or the trees, and continue to hold the possession or right thus fraudulently acquired. Assuming even that no estoppel is created, as against the grantee, by the mere execution of the deeds, even if thereunder the defendant entered upon the land and cut the trees, it appears that the deeds were procured by a false and fraudulent representation. The question of the plaintiff's ownership of the trees cut

by the defendant was directly involved in the issues submitted to the jury in the former suit in this way. If the plaintiff was not the owner, then the representation was not false and fraudulent, but true; but if he was the owner, then the verdict was right and the representation was false and fraudulent. As the deeds have been canceled, it would be permitting the defendant to take advantage of its own fraud and wrongful act to permit it to assail the plaintiff's title until it had surrendered the possession which it had obtained by the same fraud of its agent, for which it is responsible.

Whether the verdict and judgment in the former suit constitute an estoppel of record as to the ownership of the land, we need not decide, but we think there was some evidence in this case that the possession of the land was wrongfully obtained by the defendant through its agent's acts, and that it is under a duty to surrender the possession to the plaintiff, and is liable for any damages which the plaintiff may show he sustained by the cutting of the timber.

Whether the defendant may show, in reduction of the damages, that the plaintiff is not the owner of the land or the trees, is a question which may arise at the next trial, but it is not presented now. It will depend somewhat upon the nature of the findings in the other suit and the conclusiveness of the verdict and judgment therein upon the plaintiff.

There is some evidence in this case, fit to be considered by the jury, that the plaintiff was induced by the representations of the defendant's agent to execute the deeds, surrender the possession of the land and permit the defendant to cut the timber. To allow the defendant now to dispute the plaintiff's right to the possession and to damages, when he gained possession in such a way, would be as inequitable as to permit a tenant to deny his landlord's title. *Dills v. Hampton,* 92 N. C., 566. It may be true that the two cases are not strictly analogous in law, as, in the case of landlord and tenant, there is the relation of tenure, and the tenant owes fealty to his landlord, but he acquires his possession by means of the lease, and the same principle of morality is common to both cases.

As we are reviewing a judgment of nonsuit, we leave open and undecided the question whether the defendant can show in diminution of damages, or for any other purpose, that the plaintiff did not have the title, either by showing title in another or in itself. We do not think the defendant has succeeded in its attempt to show title in itself. The evidence is too vague and uncertain and lacks the probative force which entitles it to be considered by the jury. *Byrd v. Express Co.,* 139 N. C., 273.

It has not shown an adverse and continuous possession of seven years by Rebecca Oldfield under color of title.

It may be that the jury will find, upon the evidence introduced at the next trial, that the defendant did not acquire possession by fraudulently obtaining the deeds from the plaintiff. As the case now stands, there is some evidence of that fact.

As to the second tract of land, we do not see why the principle stated in *Sample v. Lumber Co.*, 150 N. C., at p. 164, does not apply. The Court there says: *"In McCoy v. Lumber Co.*, 149 N. C., 1, this Court held, in effect, that where one having a deed for real property, or being in possession, claiming to own the same in fee, conveys or grants to another a lesser estate in the property or a restricted interest therein, and there is evidence tending to show that the grantee took in recognition of the grantor's right as the true owner, the parties to such a transaction, in any litigation between them involving the title, come within the principle very generally recognized, that when it appears that both parties to a suit claim under the same title, neither, as a general rule, shall be heard to deny or question the validity of the common source of their respective claims. In the present case there is, on the face of the instrument, evidence which tends to show that the plaintiff, claiming to be the owner of the property, sold to the defendant a restricted interest therein, to wit, the standing timber of a given dimension, and that defendant bought the timber in recognition at the time of plaintiff's claim as owner of the land, and there was no error, therefore, in denying the motion for nonsuit, made by defendant on the ground that there was no evidence tending to sustain plaintiff's claim of title."

In any view of the case, the court erred in adjudging, at the close of the evidence, that a nonsuit be entered against the plaintiff.